IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| JOAN BURCH and DANNY BURCH, | : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | : CIVIL ACTION NO. <br> : 2:13-CV-00185-RWS <br> : |
| REMINGTON ARMS COMPANY, LLC and SPORTING GOODS PROPERTIES, INC., | : <br> : <br> : <br> : |
| Defendants. | : |

### ORDER

This case comes before the Court on Defendant Remington Arms Company, LLC's Motion to Dismiss [16]. After reviewing the record, the Court enters the following Order.

### Background

On November 9, 2008, Plaintiff Joan Burch and her daughter, Lisa Kimsey, were hunting deer at the Richard Russell Wildlife Management Area in Stephens County, Georgia. (Am. Compl., Dkt. [15] ¶ 2.) Kimsey was using a Remington Model 710 Bolt Action 270 Caliber Rifle ("Rifle"), which her husband had given her that April. (Id. ¶¶ 2, 18.) Upon arriving at the hunting

grounds, Burch and Kimsey loaded their weapons, engaged the safeties, and walked toward the hunting area. (Id. ¶ 3-4.) Kimsey carried the Rifle by the strap with the muzzle pointed up and the safety on. (Id. ¶ 4.) Kimsey then tripped over some undergrowth and fell to the ground, landing on one knee. (Id.) As she fell, the Rifle swung down, and as Kimsey caught the Rifle by the stock, it discharged. (Id.) The bullet struck Burch below the right knee and above the right ankle. (Id.)

Burch was first transported to Stephens County Medical Center but was subsequently air lifted to Greenville Medical University in Greenville, South Carolina, due to the severity of the wound. (Id. ¶ 5.) Burch underwent substantial medical treatment and on November 21, 2008, doctors amputated her right leg below the knee. (Id. ¶ 6.)

Burch presumed that when Kimsey caught the Rifle as it fell from her shoulder, the jolt of the catch activated the trigger. (Id. ¶ 24.) Plaintiffs allege that Burch had no reason to suspect the Rifle was defective in any way, or that she should conduct a further investigation into the accidental shooting, until a friend informed her of a CNBC documentary about Remington in November 2011. (Id. ¶¶ 25-26.) The documentary, "Remington Under Fire," aired in

October 2010 and examined reports of unintended discharges in Remington rifles containing a "Walker" fire control system. (Id. ¶ 44.) After learning of the documentary, Plaintiffs for the first time considered that a potential defect in the Rifle caused the injury. (Id. ¶¶ 27-28.)

The Rifle at issue in this case was manufactured by Remington Arms Company ("Defendant") sometime before April 2008 and is equipped with a Walker fire control system. (Id. ¶¶ 19, 21.) The Walker fire control, used exclusively by Defendant, contains a two-piece "trigger connector," which is a device that is not actually attached to the trigger body. (Id. ¶¶ 32-33.) The connector is only held in place by the tension of a spring and the side plates of the enclosed housing. (Id. ¶ 32.) When fired, the connector separates from the trigger body and creates a gap. (Id.) Plaintiffs allege that contaminants, such as field debris, manufacturing scrap, congealed lubrication, or other buildups, can become trapped in the cavity between the trigger and the connector, preventing the connector from retracting to its secure position and enabling the gun to fire without pulling the trigger. (Id.) Defendant has sold at least five million rifles equipped with the Walker fire control. (Id. ¶ 31.)

Plaintiffs allege that Defendant has been aware since at least 1947 that

its Rifles can fire without trigger activation.[1] (Id. ¶¶ 34-35.) According to internal memoranda and employee testimony, Defendant was aware of the defect in the fire control when it sold the Rifle but continued to withhold non-public information about the dangers associated with the defect. (Id. ¶¶ 39-43.) It maintained claims that it had no knowledge of the dangerous condition of the firing mechanism even after the CNBC documentary aired. (Id. ¶¶ 43-46.) Finally, Plaintiffs allege that because of Defendant's actions, they did not discover their claims until after the statute of limitations lapsed. (Id. ¶¶ 28-29.)

Plaintiffs Joan Burch and her husband, Danny Burch, filed suit against Remington Arms Company and Sporting Goods Properties, Inc.[2] on August 14, 2013. On August 27, 2013, Plaintiffs filed their Amended Complaint [15], bringing claims for strict liability design defect (Count I), strict liability failure

---

[1] Defendant's records show that common malfunctions include, for example, firing when the gun is jarred or bumped, firing on bolt opening, firing on bolt closing, firing on safety release, and firing after the trigger is pulled but delayed until the bolt or some other part of the rifle is touched. (Id. ¶ 35.)

[2] Plaintiffs originally named Sporting Goods Properties as an alter ego of Remington and refers to both as one legal entity. (Compl., Dkt. [1] ¶ 21.) However, Plaintiffs' Amended Complaint omits Sporting Goods Properties as a defendant and refers exclusively to Remington. Accordingly, Defendant Sporting Goods Properties is **DISMISSED** from this action.

to warn (Count II), negligence (Count III), fraudulent concealment (Count IV), and loss of consortium (Count V). Citing the relevant statutes of limitations, Defendant moves for dismissal of all claims.

## Discussion

### I. Motion to Dismiss Legal Standard

In handling a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a federal court must accept as true "all facts set forth in the plaintiff's complaint." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted). The court must draw all reasonable inferences from the facts in a light most favorable to the plaintiff. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1271 n.1 (11th Cir. 1999); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citation omitted). However, when a pleading merely presents " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' " the pleading does not meet the standard required by the Rule. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Id. (alteration in original) (citation omitted) (internal quotation marks omitted).

Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

Factual allegations presented in a pleading must be plausible. That is, the allegations must sufficiently "raise the right to relief above the speculative level." Id. at 556. This standard does not require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a "reasonable expectation that discovery will reveal evidence [supporting the claim]." Id.

## II. Defendant Remington Arms Company's Motion to Dismiss [16]

Defendant argues that Plaintiffs' claims are barred by the applicable statutes of limitations. Burch's injury occurred in 2008, but she filed suit in 2013, well outside the two-year statute of limitations period for personal injury actions under Georgia law. See O.C.G.A. § 9-3-33. Indeed, Plaintiffs' loss of consortium claim is also outside the four-year period provided by the statute. See id. Plaintiffs contend, however, that the limitations period was tolled until November 2011, when they first learned of the CNBC documentary "Remington Under Fire." (Pls.' Resp., Dkt. [25] at 5.) As they argue, only at that point did they learn Defendant had concealed the defect in the Rifle to

6

prevent them from discovering the cause of the injury. (Id.) Plaintiffs raise two arguments in favor of tolling: the discovery rule and the fraudulent concealment doctrine.

### A. The Discovery Rule

According to Georgia law, a plaintiff's cause of action does not accrue until "[s]he knew or through the exercise of reasonable diligence should have discovered not only the nature of [her] injury but also the causal connection between the injury and the alleged" conduct of the defendant. King v. Seitzingers, Inc., 287 S.E.2d 252, 255 (Ga. Ct. App. 1981). However, the Georgia Supreme Court has expressly limited the discovery rule to continuous torts, which are cases "of bodily injury which develop only over an extended period of time." Corp. of Mercer Univ. v. Nat'l Gypsum Co., 368 S.E.2d 732, 733 (Ga. 1988). Here, Burch's injury was neither concealed nor developed over time. It is thus not the type of injury the discovery rule is intended to cover. Accordingly, the discovery rule did not toll the statute of limitations.

### B. The Fraudulent Concealment Doctrine

Under the fraudulent concealment doctrine, the statute of limitations is tolled when "the plaintiff has been debarred and deterred from bringing an

7

action." O.C.G.A. § 9-3-96. In that regard, a plaintiff must show: "(1) the defendant committed actual fraud; (2) the fraud concealed the cause of action from the plaintiff; and (3) the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the statute of limitation." Daniel v. Amicalola Elec. Membership Corp., 711 S.E.2d 709, 716 (Ga. 2011). Defendant argues against tolling on this basis because (1) Defendant did not make any statements constituting actual fraud, and (2) Plaintiffs failed to exercise reasonable diligence to investigate their possible cause of action. (Def.'s Br., Dkt. [16-1] at 9.)

### 1. *Actual Fraud*

"The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." Home Depot U.S.A., Inc. v. Wabash Nat'l Corp., 724 S.E.2d 53, 60 (Ga. Ct. App. 2012) (quoting ReMax N. Atlanta v. Clark, 537 S.E.2d 138, 141 (Ga. Ct. App. 2000)). To toll the statute of limitations, the fraud

> must be of a character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from his action. The plaintiff has the burden of establishing fraud

8

involving moral turpitude. In the absence of a fiduciary relation, even fraud will not prevent a suit from being barred, where the plaintiff has failed to exercise reasonable diligence to detect such fraud.

Bates v. Metro. Transit Sys., Inc., 197 S.E.2d 781, 782 (Ga. Ct. App. 1973) (citations omitted).

Plaintiffs allege, among other things, that employee testimony and internal memoranda reveal that "Defendant has destroyed test results and other evidence concerning the Walker fire control." (Am. Compl., Dkt. [15] ¶ 39.) Further, Defendant decided not to warn the public or recall defective rifles even though it knew that the Walker fire control was defective. One memo shows that Defendant decided not to use the same trigger mechanism in its new Model 710 Rifle but then reversed course due to a substantial increase in costs. (Id. ¶ 42.) However, Defendant asserts that its silence cannot establish fraudulent concealment because it never made any statements upon which Plaintiffs relied and did not have a confidential relationship with them. (Def.'s Br., Dkt. [16-1] at 10.)

Both parties cite Shipman v. Horizon Corp., 267 S.E.2d 244 (Ga. 1980), in arguing whether Defendant's acts constituted fraud sufficient to toll the

9

statute of limitations. In Shipman, the Georgia Supreme Court discussed the two circumstances in which actual fraud tolls the limitations period. The first situation is where the fraud is the gravamen of the action and results in tolling of the limitations period until the fraud is discovered or by reasonable diligence should have been discovered. Id. at 246. "No other independent fraudulent act is required to toll the statute. Silence is treated as a continuation of the original actual fraud . . . ." Id. The second category is where the gravamen of the action is other than actual fraud and requires a "separate independent actual fraud involving moral turpitude which debars and deters the plaintiff from bringing his action." Id. In this situation, silence does not constitute a continuation of an original act of fraud. Id.

Plaintiffs assert that their claim falls in the first category where actual fraud is the gravamen of their claim. Thus, Plaintiffs argue that they "need not allege any independent fraudulent conduct by Defendant to sustain the tolling of the statute." (Pls.' Resp., Dkt. [25] at 7.) But as Defendants contend, the gravamen of Plaintiffs' claim is not fraud but products liability. Consequently, there must have been a separate fraudulent act of moral turpitude that concealed the cause of action from Plaintiffs in order to toll the statute of

10

limitations.

However, Plaintiffs cannot point to any statement by Defendant that they relied on in failing to discover their cause of action. In fact, the only reason Plaintiffs say they did not bring suit earlier is that they presumed Kimsey pulled the trigger, yet they fail to allege that they relied on a statement or action of Defendant during the limitations period. The only specific statements Plaintiffs identify were made in response to the CNBC documentary, which Plaintiffs did not even know about until after the limitations period. Moreover, Plaintiffs do not allege that they had any direct communication with Defendant during the limitations period; rather, Plaintiffs' most specific factual allegations relate to an internal memorandum from February 1998, but Plaintiffs fail to point to an independent act of fraud that concealed their cause of action after the accidental shot at issue, as required under Georgia law. See Shipman, 267 S.E.2d at 246. Further, the court in Shipman held that " 'mere silence' is not sufficient to toll the statute unless there is a duty to make a disclosure because of a relationship of trust and confidence between the parties." Id. No such relationship existed here. In sum, Plaintiffs have not shown that Defendant committed actual fraud that concealed their cause of action.

AO 72A
(Rev.8/82)

### 2. *Reasonable Diligence*

Even if Plaintiffs established actual fraud, Defendant insists that a fraudulent concealment claim must fail because Plaintiffs failed to exercise reasonable diligence to discover their cause of action. Indeed, Shipman held that without a relationship of trust and confidence between the parties, a plaintiff is not excused from exercising reasonable diligence. 267 S.E.2d at 246.

Defendant cites numerous cases in other jurisdictions with similar fact patterns where courts barred actions when the plaintiffs failed to exercise reasonable diligence to discover their causes of action within the limitations period. See, e.g., Humphrey v. Remington Arms Co., No. CV-12-122-BLG-RFC, 2013 WL 1804186, at *3 (D. Mont. Apr. 29, 2013) ("Plaintiffs' failure to conduct any post shooting investigation contravenes . . . the 'due diligence requirement . . . ."); Santanelli v. Remington Arms Co., No. CA 11-0245-S, 2011 WL 6003199, at *2 (D.R.I. Nov. 30, 2011) ("Santanelli's claim, regardless of any alleged wrongdoing by Remington, is a paradigm personal injury case with a readily and immediately apparent injury from a cause that could have been uncovered with reasonable diligence."); Snell v. Columbia

12

Gun Exch., Inc. 278 S.E.2d 333, 335 (S.C. 1981) ("Where as here a pistol accidentally and unexplainably discharges causing injury, the injured party or his representative is thereby placed on notice that a defect in the weapon is possible.").

While those cases arose in other jurisdictions, they are consistent with Georgia's requirement that a plaintiff exercise reasonable diligence to discover her cause of action within the limitations period. Although Plaintiffs presumed that there was a reasonable explanation for the Rifle's accidental discharge other than a defect, Georgia law requires some sort of effort to discover a cause of action. See Bates, 197 S.E.2d at 782 ("In the absence of a fiduciary relation, even fraud will not prevent a suit from being barred, where the plaintiff has failed to exercise reasonable diligence to detect such fraud."). Here, Plaintiffs allege that they undertook no inquiry whatsoever into the cause of the accidental discharge. Nor do Plaintiffs show the existence of a duty to disclose due to a relationship of trust and confidence between the parties that would excuse a failure to exercise reasonable diligence. Accordingly, Plaintiffs' allegations fail to establish both actual fraud concealing their cause of action and the exercise of reasonable diligence to discover that cause of action.

Plaintiffs' claims are therefore untimely.

    C.    Leave to Amend

Plaintiffs seek leave to amend their Complaint in the event the Court grants Defendant's Motion to Dismiss due to a technical defect in the pleadings. Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within twenty-one days after service of the pleading, or if the pleading requires a response, within twenty-one days after service of a responsive pleading or motion filed under Rule 12(b), (e), or (f). Otherwise, under Rule 15(a)(2), the party must seek leave of court or the written consent of the opposing parties to amend. Rule 15(a)(2) directs the Court, however, to "freely give leave when justice so requires." Despite this instruction, leave to amend is "by no means automatic." Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979). The trial court has "extensive discretion" in deciding whether to grant leave to amend. Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir.1999). A trial court may choose not to allow a party to amend "when the amendment would prejudice the defendant, follows undue delays or is futile." Id. A claim is futile if it cannot withstand a motion to dismiss. Fla. Power & Light Co. v.

Allis Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir.1996); see Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir.1999) (futility is another way of saying "inadequacy as a matter of law"). That is, leave to amend will be denied "if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim." Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1255 (11th Cir. 2008).

While Plaintiffs did not attach a proposed Second Amended Complaint to their Response, "failing to do so is not a basis for denying leave to amend." Id. at 1255 n.4. It is still necessary, though, for the request to "set forth the substance of the proposed amendment." Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999). In their Response, Plaintiffs fail to identify the substance of any proposed amendments. As such, the Court finds that amendment would be futile. See Patel v. Ga. Dep't BHDD, 485 F. App'x 982, 983 (11th Cir. 2012) (affirming denial of leave to amend when the plaintiff's motion "provided no reason for the district court to believe that he could offer sufficient allegations to make a claim for relief plausible on its face"). Accordingly, Defendant's Motion to Dismiss [16] is **GRANTED**.

AO 72A
(Rev.8/82)

## Conclusion

For the foregoing reasons, Defendant Sporting Goods Properties, Inc. is **DISMISSED** from this action, and Defendant Remington Arms Company, LLC's Motion to Dismiss [16] is **GRANTED**. The Clerk shall close the case.

**SO ORDERED**, this 6th day of May, 2014.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE